UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL RANDO, et al.,<br><br>Defendants. | Case No. 3:22-cv-00487-TJC-MCR |

**DEFENDANTS' RESPONSE TO THE ORDER TO SHOW CAUSE**

Defendants Michael Rando and Valerie Rando, ("Defendants" or the "Randos"), by and through their undersigned counsel, hereby respond to the Court's Order to Show Cause (Doc. 41) and the Receiver's Motion for an Order to Show Cause (Doc. 40) (the "Motion").

The Randos did not intend to violate this Court's order. Rather, on June 1, 2022, in light of matters outside the scope of this case, the Randos invoked their privilege against self-incrimination under the Fifth Amendment of the United States Constitution (the "Privilege"). The Privilege was invoked before the deadline for compliance had passed. Counsel for the Defendants immediately informed the Plaintiff and the Receiver and attempted to resolve the resulting complexities. At issue here is (1) whether the Randos can be compelled to disclose the passwords to two email accounts and/or produce all documents in those accounts despite their invocation of the Privilege, and (2) whether they should be sanctioned for invoking the Privilege and

1

refusing to take an action that could result in the waiver of the Privilege. The answer to both questions is no.

## Background

On or about May 25th, 2022, one day before the Court's Order on the Receiver's Motion to Require Compliance (Doc. 35) (the "Email Account Order"), Counsel for the Defendants met with the United States Attorney's Office for the Middle District of Florida about an unrelated but potentially overlapping matter involving the Randos. On or about June 1, 2022, in light of that meeting and the allegations in this case, the Defendants made the difficult decision to invoke the Privilege. Counsel for the Randos immediately informed the Receiver and the Plaintiff of this decision. Specifically, Defendants informed the Receiver and the Plaintiff that they were invoking the Privilege with respect to the compelled disclosure of passwords and production of documents contained in the email accounts Mikesingles@gmail.com and Val.10xlife@gmail.com (the "Email Accounts"), the same accounts at issue in the Email Account Order.

Counsel for the Parties discussed the implication of the Privilege with respect to the Email Account Order and Temporary Restraining Order. As noted in the Motion, Plaintiff and the Receiver took the position that even if the Privilege applies, the "forgone conclusion doctrine" nevertheless compels the disclosures required in the Email Account Order. For the reasons discussed below, the Privilege protects both the compelled disclosure of the passwords to the Email Accounts, and the production of documents contained therein. The forgone conclusion doctrine is inapplicable to the

facts here. Moreover, because the Randos are acting solely to protect their constitutional rights, holding them in contempt for doing so is inappropriate. *Grand Jury Subpoena Dated April 9, 1996 v. Smith*, 87 F.3d 1198, 1204 (11th Cir. 1996) (noting that placing the defendants in the position of being held in contempt or waiving their Fifth Amendment rights creates an "intolerable result").

## Memorandum of Law

The Fifth Amendment of the United States Constitution guarantees, "[n]o person shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The Fifth Amendment privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," *Kastigar v. United States*, 406 U.S. 441, 444 (1972), and "must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (citations omitted).

An individual must show three things to fall within the ambit of the Fifth Amendment: (1) compulsion, (2) a testimonial communication or act, and (3) incrimination. *See United States v. Ghidoni*, 732 F.2d 814, 816 (11th Cir. 1984) (citing *United States v. Authement*, 607 F.2d 1129, 1131 (5th Cir. 1979) (per curiam)). Based on conversations between the Parties and the Receiver, and the Motion itself, the only element that is currently at issue is the second. Specifically, whether the disclosure of the passwords to the Email Accounts, or the production of all documents therein, is testimonial and if so, whether the foregone conclusion doctrine applies.

### 1. The Privilege Protects the Compelled Disclosure of the Email Accounts Passwords and the Production of Documents

The Email Account Order compels the Defendants to do two things, both are testimonial: to provide the passwords to the Email Accounts and to produce all the documents contained in the Email Accounts. "The touchstone of whether an act of production is testimonial is whether the government compels the individual to use 'the contents of his own mind' to explicitly or implicitly communicate some statement of fact." *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335, 1345 (11th Cir. 2012) (quoting *Curcio v. United States*, 354 U.S. 118, 128 (1957)).

Disclosure of an account password is testimonial. In *Grand Jury Subpoena March 25, 2011*, the court concluded that decryption and production of encrypted hard drives "would require the use of the contents of [the owner's] mind and could not be fairly characterized as a physical act that would be nontestimonial in nature." 670 F.3d at 1346. The same rationale applies to the compelled disclosure of the passwords to the Email Accounts at issue here. *See also McKathan v. United States*, 969 F.3d 1213, 1223-24 (11th Cir. 2020) (noting that providing a PIN to access a phone is testimonial (citing *In re Grand Jury Subpoena March 25, 2011*, 670 F.3d at 1346-49; and *United States v. Blake*, 868 F.3d 960, 971 (11th Cir. 2017) (holding that a bypass order was necessary or appropriate because there was no other way for the FBI to execute the district court's order to search the contents of an iPad, since they were passcode protected, and the

government could not compel the user to provide the passcode, since that would violate the Fifth Amendment))).[1]

The Privilege also protects the act of producing documents in the Email Accounts. In *Fisher v. United States*, the Supreme Court recognized that "[t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own . . . ." 425 U.S. 391, 410 (1976). "The production of documents conveys," it explained, "the fact that the documents exist, that they were in the possession of the witness, and that they were the documents subject to the subpoena." *Id*. Where these communicative acts of production have "testimonial" value and incriminate the witness, the Fifth Amendment privilege may be invoked. *United States v. Doe*, 104 S. 465 U.S. 605, 617 (1984) (holding that Fifth Amendment protects a sole proprietor from producing business records when the act of production itself constituted testimonial incrimination). The production of documents in the Email Accounts here have the same communicative aspects described in *Fisher*. As such, the Defendants cannot be compelled to produce documents or disclose passwords to the Email Accounts.

---

[1] *See also*, *United States v. Kirschner*, 823 F. Supp. 2d 665, 668-69 (E.D. Mich. 2010) ("[T]he government is not seeking documents or objects—it is seeking testimony from the Defendant, requiring him to divulge through his mental processes his password—that will be used to incriminate him. . . . Accordingly, the Court quashes the subpoena requiring Defendant to testify—giving up his password—thereby protecting his invocation of his Fifth Amendment privilege against compelled self-incrimination.").

## 2. The Forgone Conclusion Doctrine Does Not Apply

At best, the Plaintiff and the Receiver can identify categories of documents that are likely to exist in the Email Accounts. That is plainly insufficient to invoke the foregone conclusion doctrine. Under the "foregone conclusion" doctrine, "an act of production is not testimonial—even if the act conveys a fact regarding the existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with 'reasonable particularity' that, at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a 'foregone conclusion.' " *Grand Jury Subpoena March 25, 2011*, 670 F.3d at 1345-46. Although the government need not "identify exactly the documents it seeks . . . categorical requests for documents the Government anticipates are likely to exist simply will not suffice." *Grand Jury Subpoena* at 1347-48 (citation omitted).

Cases applying this doctrine involve documents that the government has previously viewed or can identify with specificity. The case cited by the Receiver illustrates this exception and why it is inapplicable here. In *United States v. Apple MacPro Computer*, 851 F.3d 238, 247 (3d Cir. 2017), the forgone conclusion doctrine was applied to compel production of encrypted files on a computer and other devices. There, a forensic examination of the subject computer revealed evidence that specific files were downloaded and stored in encrypted drives. The government knew those files existed because of the forensic examination and knew them to contain child pornography because of their "hash" values, among other reasons.

The court in *In re Boucher* reached a similar result. 2:06-MJ-91, 2009 WL 424718, at *2 (D. Vt. Feb. 19, 2009). In that case agents discovered images of child pornography in the border search of a laptop computer. During questioning, the defendant voluntarily showed agents additional videos and images of child pornography on an encrypted drive on his computer. Agents shut down the computer after the defendant's arrest and were unable to access the encrypted drive a second time. The court applied the foregone conclusion doctrine to compel the production of the unencrypted files that the government agents had already viewed. *See also Sec. & Exch. Comm'n v. Complete Bus. Sols. Group, Inc.,* 20-CIV-81205-RAR, 2022 WL 1288749, at *3 (S.D. Fla. Apr. 29, 2022), motion to certify appeal denied, 20-CV-81205-RAR, 2022 WL 1522078 (S.D. Fla. May 13, 2022) (compelling production of 10 specific categories of assets after receiver demonstrated with "reasonable particularity" that he is aware of the materials he is seeking). No such showing has been made here.

*Grand Jury Subpoena March 25, 2011* is more analogous to this case. 670 F.3d 1335. There, officers seized computer equipment containing encrypted information that the government suspected might include child pornography. Despite its best efforts, law enforcement was unable to decrypt the contents of the computer equipment. Consequently, a grand-jury subpoena was issued for the owner of the computer equipment to produce the "unencrypted contents" of it, as well as "any and all containers or folders" on the computer equipment. The owner invoked his Fifth Amendment rights and the Eleventh Circuit upheld that invocation. It explained that

7

"[n]othing in the record before us reveals that the Government knows whether any files exist or the location of those files on the hard drives . . . ."While the law does not require the documents sought to be identified precisely, "it does require some specificity in . . . requests—categorical requests for documents . . . [anticipated as] likely to exist simply will not suffice." *Id.* at 1347 (citations omitted).[2] *See also, e.g., Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1373 (S.D. Fla. 2012) (addressing specific document requests by a receiver and modifying them to "call for objectively determinable universes of documents [that] do not require [the defendant] to employ the 'contents of [her] mind' to choose what documents might be responsive to the requests. Put simply, [the defendant] need not exercise any judgment to respond to the requests.").

In this case, there is no subpoena or document request at all, let alone one that describes any records with "reasonable particularity." The foregone conclusion doctrine does not apply and, therefore, the Defendants cannot be compelled to disclose their passwords or produce any documents contained in the Email Accounts.

---

[2] The Plaintiff may contend that it already knows that the Defendants can access the Email Accounts, but that is only one of the testimonial aspects of production. It cannot reasonably contend that it knows anything about the contents of the Email Accounts aside from a general suspicion that they were used occasionally for business purposes or that specific payment platform notifications were sent there. That is plainly insufficient to invoke the foregone conclusion doctrine with respect to the entirety of records in the Email Accounts.

### 3. Defendants Should Not be Held in Contempt Because Compliance Would Require Them to Violate Their Constitutional Rights

Contempt is not appropriate where, as here, compliance with the Court's Order would have required the Randos to violate their Constitutional Rights. Placing the Defendants in the position of being held in contempt or waiving their Fifth Amendment rights creates an "intolerable result." *E.g., Grand Jury Subpoena Dated April 9, 1996 v. Smith*, 87 F.3d 1198, 1204 (11th Cir. 1996).[3]

The context of Defendants' invocation of the Privilege is important. Counsel for Defendants met with the US Attorney's Office on or about May 25, 2022, one day after Defendants filed their response to the Receiver's previous motion to compel (Doc. 31) and one day prior to the Email Account Order. When they made the decision to invoke the Privilege several days later, Counsel for the Defendants immediately informed the Plaintiff and Receiver and did so *prior* to any deadline required by the Email Account Order.[4] The Parties attempted to resolve the issues created by the Privilege without Court intervention, but were unable to do so, resulting in this Motion. Under those circumstances, contempt is not appropriate.

---

[3] The Temporary Restraining Order ("TRO") (Doc. 12) contains a variety of disclosure obligations that would require the Randos to waive the Privilege. Given the "intolerable result" this conflict creates, the Defendants respectfully request that, in the event that the Court converts the TRO to a preliminary injunction, the injunction provides sufficient protection for the Privilege.

[4] Defendants have collected and processed all of the documents in the Email Accounts in the event that the Court orders production.

### Conclusion

Defendants invoked their constitutional right to remain silent in response to an unrelated, but overlapping, government investigation and to the broad allegations of fraud in this case. The privilege against compulsory self-incrimination is sacrosanct. *Counselman v. Hitchcock*, 142 U.S. 547 (1892); *Malloy v. Hogan*, 378 U.S. 1 (1964); *Miranda v. Arizona*, 384 U.S. 436 (1966); *Couch v. United States*, 409 U.S. 322 (1973). Defendants cannot be compelled to waive it and should not be punished for invoking it. They respectfully request that the Court discharge the Order to Show Cause, deny the Receiver's request to compel compliance with the Court's Email Account Order and the Temporary Restraining Order (both entered prior to the invocation of the Privilege), and take such further measures necessary to amend those Orders to ensure that the Privilege is maintained.

Respectfully submitted, June 10, 2022.

        **GUNSTER, YOAKLEY & STEWART, P.A.**

        By: */s/ Nathan W. Hill*
        Michael J. Freed
        Florida Bar No. 797529
        1 Independent Drive, Suite 2300
        Jacksonville, FL 32202
        mfreed@gunster.com
        L.T. Lafferty
        Florida Bar No. 975575
        401 East Jackson Street, Suite 2500
        Tampa, FL 33602
        ltlafferty@gunster.com
        Nathan W. Hill
        Florida Bar No. 91473
        200 South Orange Ave, Suite 1400

Orlando, Florida 32801
nhill@gunster.com
Jonathan K. Osborne
Florida Bar No. 95693
josborne@gunster.com
Samantha V. Medina
Florida Bar No. 1030933
smedina@gunster.com
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone:  (954) 462-2000
Facsimile:  (954) 523-1722

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of June, 2022 a true and correct copy of the foregoing document was electronically filed with the United States District Court for the Middle District of Florida using the CM/ECF system which will send notification of such filing to all counsel of record.

By: */s/ Nathan W. Hill*